W. R. PERRY *et al.*

*v.*

ELIHU BOZARTH *et al.*

*Opinion filed October 25, 1902.*

1. APPEALS AND ERRORS—*freehold is involved in proceeding to establish highway.* The interest acquired in the lands of others by proceedings taken by highway commissioners to establish a highway is a perpetual easement, and hence an appeal from a *certiorari* proceeding quashing the order of the commissioners vacating an old road and laying out a new one involves a freehold.

2. SAME—*Appellate Court has no power to review case involving freehold.* The amendment in 1879 (Laws of 1879, p. 222,) of section 88 of the Practice act removed, by implication, all semblance of authority in the Appellate Court to review cases involving a freehold which might have been implied from section 88 as originally passed in 1877, and hence no force attaches to the provision of section 90 of the Practice act providing for the review by the Supreme Court of judgments of the Appellate Court in such cases.

3. SAME—*practice where Appellate Court assumes jurisdiction in freehold case.* If the Appellate Court assumes jurisdiction of a case involving a freehold, the Supreme Court, on further appeal, must reverse the Appellate Court's judgment for want of jurisdiction, and remand the cause with directions to dismiss the appeal.

*Perry* v. *Bozarth,* 95 Ill. App. 566, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

JAMES L. LOAR, for appellants.

CHARLES I. WILL, and OWEN & OWEN, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

These appellees presented in the circuit court of McLean county a petition for a common law writ of *certiorari* ordering the appellant commissioners of highways of the town of Allin, Edgar Phillips, justice of the peace,

and A. T. McReynolds, town clerk, also of said town of
Allin, to bring before the court the record of the proceed-
ings had and taken by said commissioners in which an
order was entered by said commissioners laying out and
establishing a certain new road in said town, (described
in detail in the petition,) and vacating a certain other
established road in said town, (also fully described.)
The writ was issued as prayed and return thereto duly
made by the appellants.    The cause was heard by the
court, and judgment entered finding that the proceedings
for the vacation of the old road and the establishment
of the new road were irregular and void, and adjudging
that the order vacating the old road and that establish-
ing the new road be each quashed, vacated and set aside.
The appellant commissioners prosecuted their appeal to
the Appellate Court for the Third District, and a judg-
ment was entered in that court affirming the judgment
of the circuit court.    This is a further appeal attempted
to be perfected to this court.

The interest acquired in the lands of others by pro-
ceedings taken by highway commissioners for the estab-
lishment of a public highway is a perpetual easement,
and the right and interest of the highway commissioners,
as the representatives of the public, in an established
public highway, is a perpetual easement, and a perpetual
easement in the lands of another is a freehold.    (*Chaplin*
v. *Highway Comrs.* 126 Ill. 264; *Town of Brushy Mound* v.
*McClintock*, 146 id. 643; *Waggeman* v. *Village of North Peoria*,
160 id. 277; *Village of Crete* v. *Hewes*, 168 id. 330; *Farrelly*
v. *Town of Kane*, 172 id. 415.)    In the former of the cases
cited, we held that the decisions in the cases of *Lucan*
v. *Cadwallader*, 114 Ill. 285, and *Eckhart* v. *Irons*, id. 469, in
which this court held that an easement in land did not
constitute a freehold estate, were pronounced without
sufficient consideration, and said:  "A perpetual ease-
ment in lands, or any interest in lands in the nature of
such easement, when created by grant or by any proceed-

ing which in law is equivalent to a grant, constitutes a freehold." We further held in the same case that the Appellate Court was lacking in jurisdiction to entertain an appeal in a cause in which a perpetual easement in land was involved, and reversed the judgment of the Appellate Court entered in the cause because it was so wanting in jurisdiction, and remanded the cause to the Appellate Court with directions to dismiss the appeal. In *Town of Brushy Mound* v. *McClintock, supra,* the town claimed a highway existed by prescription, and the appellee, who owned the fee in the land, disputed the existence of a highway. The cause came to the Appellate Court for the Third District, and that court dismissed the appeal for the reason the controversy involved a freehold. The town prosecuted an appeal from the judgment of dismissal to this court, and we held the decision of the cause involved the issue whether the public had the interest of a perpetual easement in a highway passing over appellee's land, and that that issue involved a freehold and that the appeal was properly dismissed by the Appellate Court. In *Village of Crete* v. *Hewes, supra,* the issue involved was whether the village of Crete had lost a portion of a street by abandonment, and we held the Appellate Court was without jurisdiction to entertain the appeal, and reversed its judgment for that reason and remanded the cause with directions to dismiss the appeal. Upon the authority of these adjudicated cases it is clear the Appellate Court was without jurisdiction to entertain the appeal in the case at bar.

In view of the phraseology of section 90 of the act to amend an act entitled "An act in regard to practice," etc., approved June 2, 1877, being the section which now controls the matter of removal of cases from the Appellate Courts to the Supreme Court by appeal or writ of error, (being section 90 of the present Practice act,) it seems necessary we should consider the proper course to be pursued by this court when the Appellate Court en-

tertains jurisdiction of a cause which involves a freehold and an appeal is prosecuted to this court from the judgment of the Appellate Court. Said section 90 provides that appeals may be taken from such Appellate Courts to the Supreme Court "in all criminal cases and in all cases where a franchise or freehold or the validity of a statute is involved," etc. It here arises as a pertinent suggestion that the purpose of the phrase quoted from said section 90 is to authorize this court to entertain appeals from the Appellate Courts in cases which by design of the parties or by inadvertence were submitted to and determined in the Appellate Court, but in which a franchise, a freehold or the validity of a statute is involved. It is thought, also, section 11 of article 6 of the constitution of 1870, which authorized the creation of the Appellate Court, adds force to the suggestion. Said section 11 of article 6 of the constitution reads as follows: "After the year of our Lord 1874, inferior Appellate Courts, of uniform organization and jurisdiction, may be created in districts formed for that purpose, to which such appeals and writs of error as the General Assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the Supreme Court, in all criminal cases, and cases in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law."

If said section 90 of the Practice act authorizes this court to entertain appeals from the Appellate Courts in cases acted upon in such courts in which a freehold, a franchise or the validity of a statute is involved, it will relieve this court of the by no means pleasant duty of saying to litigants whose controversies involve a franchise, a freehold or the validity of a statute, but who have by inadvertence appealed to the Appellate Court: "We would take jurisdiction of your case if you had prosecuted the appeal from the circuit court directly to this

court, but as you have carried your appeal to the Appellate Court we will require you to re-trace your steps through the Appellate Court to the circuit court and return to this court by direct appeal from the trial court." If, however, the Appellate Court be without jurisdiction of a case brought there by appeal, nothing but an express statute would justify this court in entertaining a further appeal removing the case from the Appellate Court to this court. Such practice, if indulged in this court, would subject successful suitors in the trial court to the delay and costs incident to the presentation of the case in the Appellate Court, and could be availed of by the defeated party for the mere purpose of delay and vexation of his adversary. A party who, upon a hearing in a trial court, has been found without a cause of action if the plaintiff, or to be in the wrong if the defendant, if he desires to have his case reviewed, should be required to take his appeal to or sue out his writ of error from the court which the law has invested with jurisdiction and power to hear and determine the controversy. Any other course would entail unnecessary delay to the party who had established his right in the trial court, and would subject him to the additional expense of defending the judgment which he had been adjudged entitled to hold, against the attacks of adversaries in a court which had no legal right or power to determine whether the judgment was correctly and legally entered or not.

The constitutional declaration that every person ought, under the law, to obtain justice and right "completely and without denial, promptly and without delay," forbids any practice in the matter of entertaining appeals in this court which would tend to enable one litigant to vex his adversary by adding delay and the burden of additional expense. If the defeated party in a case in which a franchise, a freehold or the validity of a statute is involved has a lawful right to but one appeal,—that to this court,—no action on the part of this court

should be taken which would enable him to vex and
wrong his adversary with the delay and additional ex-
pense consequent upon two appeals,—one to the Appel-
late Court and a second to this court.   If, however, said
section 90 of the Practice act, or the constitutional pro-
vision before referred to, gives the right of appeal to this
court from the Appellate Court in such cases, we must, of
course, entertain such appeals.  But we do not think such
is the meaning and effect of either the organic law or the
statute in question.   The constitutional authority to the
legislature is broad enough to authorize the law-making
power to invest the Appellate Court with jurisdiction to
entertain and review cases in which a franchise, a free-
hold or the validity of a statute is involved, but it was
the constitutional intent that if such power of review
should be given the Appellate Court the action of such
court in such cases should not be final, hence the pro-
vision in said section 11 of the constitution that appeals
to and writs of error from the Supreme Court should lie
from the decisions of the Appellate Courts in all such
cases.   That provision is but a limitation on the power
of the legislature to invest the Appellate Courts with the
power to finally decide cases of that character.   Plainly
stated, this section of the constitution authorized the leg-
islature to create Appellate Courts and endow them with
appellate jurisdiction in all cases, but makes it incum-
bent on the legislature, if authority is given the Appel-
late Courts to review criminal cases and cases in which
a franchise or freehold or the validity of a statute is
involved, to provide that such cases may be reviewed
finally in the Supreme Court upon appeal or error.

On the 2d day of June, 1877, the General Assembly
adopted the act establishing the Appellate Courts of the
State and defining the jurisdiction of such courts, (Laws
of 1877, p. 69,) and on the same day the General Assem-
bly adopted an act amending the then existing Practice
act and adding a number of sections thereto.  (Laws of

1877, p. 148.) The amendatory sections thus added to the Practice act relate, in the main, to the mode and manner of obtaining the review of cases determined in the trial and Appellate Courts, and incidentally purported to affect the jurisdiction of the Appellate Courts. Section 8 of the Appellate Court act and such amendatory sections of the Practice act must therefore be construed together. (*Young* v. *Stearns*, 91 Ill. 221; *Lynn* v. *Lynn*, 160 id. 307.), Section 8 of the Appellate Court act denies to the Appellate Courts jurisdiction to review cases which involve a franchise, a freehold or the validity of a statute. Section 67 of the amendatory Practice act, as adopted in 1877, provided that "appeals from and writs of error to all circuit courts, the superior court of Cook county, and city courts, and from other courts from which such appeals and writs of error may be allowed by law, may be taken to the Appellate Courts from all final judgments, orders and decrees except as hereinafter stated." Thereinafter, in section 88 of the act, it was provided as follows: "Appeals from and writs of error to circuit courts, and the superior courts of Cook county, and city courts, in all criminal cases and cases in which a franchise or freehold or the validity of a statute is involved, shall be taken directly to the Supreme Court in case the party appealing or prosecuting such writ of error shall so elect, excepting in cases of chancery."

This section implies, at least, that an appeal from or writ of error to circuit courts and other trial courts shall be taken to the Appellate Courts unless the party who desires to appeal or prosecute the writ of error shall elect to proceed directly to the Supreme Court. Section 90 of the amendatory act of 1877 lends additional force to this implication. Said section 90 is as follows: "In all criminal cases and in all cases where a franchise or freehold, or the validity of a statute is involved, and in all other cases where the sum or value in the controversy shall exceed one thousand dollars ($1000) exclusive

of costs, which shall be heard in any of the Appellate Courts, upon errors assigned, if the judgment of the Appellate Court be that the order, judgment or decree of the court below be affirmed, or if final judgment or decree be rendered therein in the Appellate Court, or if the judgment, order or decree of the Appellate Court be such that no further proceedings can be had in the court below, except to carry into effect the mandate of the Appellate Court, any party to such cause shall be permitted to remove the same to the Supreme Court by appeal or writ of error."

This section was framed in view of section 88 of the same act, which, as before said, indicated that it was the legislative intent, in adopting the Practice act, that the Appellate Courts should have power to review cases involving a freehold, a franchise or the validity of a statute, unless the party desiring such review should elect that the case should be reviewed at once by the Supreme Court. Therefore section 90 was so framed as to authorize judgments rendered in the Appellate Courts in cases in which a freehold, a franchise or the validity of a statute was involved, to be reviewed in the Supreme Court on appeal or writ of error. Section 67 of the amendatory act of 1877 has not been amended or changed, but appears now as section 67 of our Practice act. Section 88 of the amendatory act was, however, amended at the session of the General Assembly in 1879, (Laws of 1879, p. 222,) and as amended and changed, (3 Starr & Cur. Stat. 1896, chap. 110, sec. 88, p. 3114,) constitutes the statutory authority for obtaining the review of judgments entered in the circuit courts, the superior court of Cook county or any city court, and it provides that in all cases in which a franchise or freehold or the validity of a statute is involved an appeal shall be taken directly to or the writ of error sued out of the Supreme Court. The amendment of said section 88 of the act of 1877 rendered the section consistent with the act of 1877 establishing

the Appellate Court and defining its jurisdiction. But said section 90 of said act of 1877, which, as we have seen, was framed in view of the provisions of section 88 of the same act as originally adopted, and for that reason provided for the removal from the Appellate Courts to the Supreme Court, by appeal or writ of error, of all cases in which a freehold, a franchise or the validity of a statute was involved, has been retained in the body of our statute without change or amendment, and now appears as section 90 of the Practice act. (3 Starr & Cur. Stat. 1896, p. 3153.) The amendment and revision in 1879 of section 88 of the act of 1877, whereby all semblance of authority in the Appellate Courts to review cases involving a franchise, a freehold or the validity of a statute was removed by implication, operated to repeal the provisions of section 90 relating to the matter of the review in the Supreme Court of the judgments entered in the Appellate Courts in cases involving a franchise, a freehold or the validity of a statute. All reason for such provisions in section 90 were removed by the amendment of section 88, and that amendment impliedly repealed such provisions in section 90. *Hayward* v. *Gunn,* 82 Ill. 385; *Geisen* v. *Heiderich,* 104 id. 537; 23 Am. & Eng. Ency. of Law, (1st ed.) 489.

The General Assembly has not conferred upon Appellate Courts jurisdiction of the subject matter of suits which involve a franchise, a freehold or the validity of a statute, and jurisdiction of the subject matter of a suit cannot be conferred, by consent of the parties, upon either a trial or Appellate Court. *Ginn* v. *Rogers,* 4 Gilm. 131; *Fleischman* v. *Walker,* 91 Ill. 318; *Richards* v. *Lake Shore and Michigan Southern Railway Co.* 124 id. 516; 17 Am. & Eng. Ency. of Law, (2d ed.) 1061.

The Appellate Court was without jurisdiction to decide the controversy in the case at bar and without authority to enter any judgment therein. We can take no other course than that pursued in *Chaplin* v. *Highway*

*Comrs. supra,* which is to reverse the judgment so entered, for the reason the Appellate Court was wanting in jurisdiction to enter the same, and remand the cause to the Appellate Court with directions to dismiss the appeal.

*Reversed and remanded, with directions.*